Grant H. Frazier (#035535)
Brennan A.R. Bowen (#036639)
FRAZIER LAW, PLLC
7702 E Doubletree Ranch Rd., Suite 300
Scottsdale, Arizona 85258
Phone: 480-499-0855
filings@frazierlawpllc.net
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Public Interest Legal Foundation, Inc., a Virginia non-stock non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Adrian Fontes, in his official capacity as Secretary of State for the State of Arizona,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Assigned to the Hon.) |

Plaintiff Public Interest Legal Foundation, Inc., by and through counsel, brings this action for declaratory and injunctive relief against Defendant for violations of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), because the action seeks injunctive and declaratory relief under the NVRA.

2. This Court also has jurisdiction because Plaintiff complied with the NVRA's pre-litigation notice requirements and Defendant failed to cure the violation of law in the time the NVRA affords. *See* 52 U.S.C. § 20510(b)(1)-(2).

3. Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**PARTIES**

4. The Public Interest Legal Foundation, Inc., ("Foundation") is a non-partisan, 501(c)(3) public interest organization incorporated and based in Alexandria, Virginia. The Foundation promotes the integrity of the electoral process nationwide through research, education, remedial programs, and litigation. The Foundation regularly utilizes the NVRA's Public Disclosure Provision and state and federal open records laws that require government records be made available to the public. Using records and data compiled through these open records laws, the Foundation analyzes the programs and activities of state and local election officials in order to determine whether effective and lawful efforts are being made to keep voter rolls current and accurate in accordance with federal and state law, and to determine whether eligible registrants have been improperly removed from voter rolls. The Foundation uses public data to propose and promote best practices and solutions for specific and general voter list maintenance problems faced by election officials and lawmakers. The Foundation also uses records and data to produce and disseminate reports, articles, blog and social media posts, and newsletters in order to advance the public education aspect of its organizational mission.

5. Defendant Adrian Fontes is the Secretary of State for the State of Arizona. "The Secretary of State is the chief elections officer of Arizona, and it is the secretary's responsibility to obtain and maintain uniformity in the application, operation and interpretation of the election laws." A.R.S. § 16.142(A)(1). As Arizona's chief elections official, Defendant is "responsible for coordination of State responsibilities under [the NVRA]." 52 U.S.C. § 20509. Defendant is sued in his official capacity only.

## BACKGROUND

***The NVRA***

6. The NVRA provides, in relevant part, "In the administration of voter registration for elections for Federal office, each State shall—conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of—the death of the registrant[.]" 52 U.S.C. § 20507(a)(4)(A).

7. The NVRA also provides, in relevant part, "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (the "Public Disclosure Provision").[1]

8. The Public Disclosure Provision thus has two distinct requirements: maintenance and disclosure. *See id*.

9. In the words of the Fourth Circuit, the Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012).

10. In the words of the First Circuit, the Public Disclosure Provision "evinces Congress's belief that public inspection, and thus public release, of Voter File data is necessary to accomplish the objectives behind the NVRA." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 54 (1st Cir. 2024).

11. Other United States District Courts agree. *See e.g. True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 721 (S.D. Miss 2014) ("The Public Disclosure Provision thus helps 'to

---

[1] The records described by the Public Disclosure Provision are common referred to as "voter list maintenance records."

ensure that accurate and current voter registration rolls are maintained.'") (citations and quotations omitted).

12. The Public Disclosure Provision is thus a means to ensure eligible registrants are registered and ineligible registrants are not. *See, e.g.*, *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 706 (E.D. Va. 2010) (explaining that the "'official lists of eligible voters' would be inaccurate and obsolete if eligible voters were improperly denied registration.").

***The Electronic Registration Information Center***

13. The Electronic Registration Information Center ("ERIC") is a non-profit organization with the mission of assisting states to "improve the accuracy of America's voter rolls" and "increase access to voter registration for all eligible citizens." Home, ERIC, https://ericstates.org/ (last visited Jul. 15, 2025).

14. Members control ERIC. "The chief election official from each member jurisdiction designates a Member Representative to the ERIC Board of Directors. Each Member Representative serves as a voting member of the board." ERIC: FAQ's, No. 4 "Who Controls ERIC?", https://ericstates.org/faq/ (last visited Jul. 15, 2025) ("ERIC FAQs").

15. Members also fund ERIC. Members "pay a one-time membership fee of $25,000" and "annual dues." ERIC FAQs, No. 5 "How is ERIC funded?".

16. Arizona has been a member of ERIC since 2018.[2]

17. All members of ERIC, including Arizona, signed the ERIC "Membership Agreement," which "sets forth the terms and conditions of membership" in ERIC. ERIC

---

[2] According to ERIC's website, as of June 2025, the following are members of ERIC: Alaska, Arizona, Colorado, Connecticut, Delaware, Georgia, Hawaii, Illinois, Kentucky, Maine, Massachusetts, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Pennsylvania, Rhode Island, South Carolina, Utah, Vermont, Washington, Wisconsin, and the District of Columbia. *See* ABOUT ERIC, "Which States are Members of ERIC?", https://ericstates.org/about/ (last visited Jul. 15, 2025).

Bylaws, Article II, Section 3 (PDF page 4), https://ericstates.org/wp-content/uploads/documents/ERIC-Bylaw-MA-FINAL.pdf ("ERIC Bylaws," attached hereto as **Exhibit A**) (last visited Jul. 15, 2025).

18. Per the ERIC Membership Agreement, Arizona provides the following to ERIC "every sixty (60) days":

- "(1) all inactive and active voter files" and,
- "(2) all licensing or identification records from motor vehicles departments[.]"

ERIC Bylaws, (Membership Agreement) at Section 2(b) (ep 17).

19. Using member and third-party data, ERIC makes reports available to Arizona and other members. *See id.* (Membership Agreement) at Section 3(a)(i) (ep 17-18).

20. One of the reports ERIC makes available to Arizona and other members is the Deceased Report, which "identifies voters who may have died." *Id.* (Membership Agreement) at Section 3(a)(i)(E) (ep 17-18) ("ERIC Deceased Reports").

21. Arizona receives ERIC Deceased Reports from ERIC. *See id.*

22. When Arizona receives ERIC Deceased Reports and has "validated the data," Arizona is required to, "at a minimum, initiate contact with that voter in order to correct the inaccuracy or obtain information sufficient to inactivate or update the voter's record." *Id.* (Membership Agreement) at Section 4(b) (ep 25).

23. Arizona "has ninety (90) days after the data was sent to initiate contact with at least 95% of the voters on whom data indicating a record was inaccurate or out-of-date … was provided." *Id*.

24. "Within ten (10) business days of the ninetieth day, [Defendant] shall provide a written certification to the Executive Director that [Arizona] has complied or not complied with" the requirements described in paragraphs 21 and 21 "and, if out of compliance, the extent of such non-compliance." *Id*.

25.     Arizona uses ERIC Deceased Reports to conduct list maintenance programs and activities required by state law and the NVRA, including cancellation of registrations belonging to deceased individuals. *See* 52 U.S.C. § 20507(a)(4)(A).

26.     ERIC Deceased Reports are plausibly subject to disclosure under the NVRA's Public Disclosure Provision. *See, e.g.*, *Pub. Interest Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1014 (D. Alaska 2023) ("The Foundation has plausibly alleged in its complaint that the ERIC data falls within the reach of the disclosure provision because the review of the ERIC data is an 'activity' or 'program' that the State has 'implement[ed]' to determine the continued eligibility of registered voters for the purpose "of ensuring the accuracy and currency of official lists of eligible voters."); *Pub. Int. Legal Found., Inc. v. Griswold*, Civil Action No. 21-cv-03384-PAB-MEH, 2023 WL 6376706, at *4 (D. Colo. Sep. 29, 2023) ("[T]he Foundation has sufficiently alleged the ERIC records it seeks are concerned with implementing a program or activity under the NVRA, namely, maintaining accurate voter rolls.").

***ERIC Deceased Retraction Reports***

27.     After providing ERIC Deceased Reports to members, ERIC occasionally learns that data provided in those Reports is inaccurate. Specifically, ERIC learns that registered voters ERIC identified as deceased are in fact alive.

28.     When ERIC learns about mistakes in its Deceased Reports, ERIC provides reports to impacted members that identify the registered voters who were erroneously identified as deceased ("ERIC Retraction Reports").

29.     ERIC Retraction Reports are provided to members so that members can remedy or correct erroneous cancellations, which may include the acts of notifying and re-registering a cancelled registrant.

30.     In other words, ERIC Retraction Reports concern members' voter list maintenance programs and activities.

31. Arizona receives ERIC Retraction Reports from ERIC and relies on those Reports to conduct programs and activities designed to ensure Arizona's voter roll is accurate and current.

32. ERIC Retraction Reports are therefore subject to disclosure under the NVRA's Public Disclosure Provision.

***Defendant is Denying the Foundation Access to Voter List Maintenance Records***

33. On April 24, 2024, the Foundation emailed a letter to the Arizona Secretary of State's office. The letter requested inspection or production of the following records, pursuant to the NVRA's Public Disclosure Provision:

1. Copies of all "Deceased Retractions" reports received from ERIC.
2. Copies of all other records concerning "Deceased Retractions" reports, e.g., correspondence.

**Exhibit B** (hereafter, the "Request").

34. On April 24, 2024, Arizona's NextRequest public records management portal ("NextRequest") alerted the Foundation that Request 24-511 was opened to complete the matter. **Exhibit C**, at 3 (NextRequest screenshot).

35. On August 28, 2024, NextRequest alerted the Foundation to the availability of some responsive documents and closed Request 24-511. Arizona furnished digital copies of ERIC member by-laws, email communications about deceased retractions, and document specifications regarding deceased retraction files. *See id.* These responsive documents are generally what was expected to be received under Foundation's Request 2.

36. On August 29, 2024, the Foundation responded via NextRequest seeking clarification about apparently missing responsive documents, noting that Request 24-511 may have been prematurely closed. Based upon initially disclosed email records, it appeared that Arizona received deceased retraction reports on at least five separate occasions between

7

2021 and 2024. *Id.* The Foundation asked that Arizona "provide copies of those retraction reports, as the original request described." *Id.*

37. On September 26, 2024 Arizona responded via NextRequest: "Please be advised that Deceased Retraction files reports cannot be released to the public. Pursuant to 15 C.F.R. § 1110.1 et seq, only a certified person may receive access to the Deceased Redaction file and associated lists to the Death Master File as defined in 15 C.F.R. § 1110.2." *Id.*

***The Foundation Notified Defendant that She is Violating the NVRA***

38. On October 1, 2024, the Foundation notified Defendant that he is in violation of the NVRA for failure to maintain and permit inspection of voter list maintenance records as required by 52 U.S.C. § 20507(i)(1). (the "Violation Notice," attached hereto as **Exhibit D**).

39. The Violation Notice further notified Defendant that the requested records fall within the NVRA's scope and are subject to public inspection. *Id.* at 3.

40. The Violation Notice further notified Defendant that litigation may commence against him if the violation about which he was notified was not cured within 20 days of hisreceipt of the letter. *Id.*

41. By sending the Violation Notice to Defendant, the Foundation complied with the NVRA's pre-litigation notice requirements. *See* 52 U.S.C. § 20510(b)(1)-(2).

***Defendant Did Not Cure His Violation in the Time the NVRA Affords***

42. Defendant received notice of his NVRA violation via email on October 1, 2024.

43. The NVRA afforded Defendant 20 days to cure his NVRA violation. 52 U.S.C. § 20510(b)(2).

44. Defendant did not cure his NVRA violation within 90 days of his receipt of the Notice Letter, and as of the date of this pleading, has still not cured his NVRA violation.

8

45. This action is therefore ripe.

*Defendant's Actions Are Harming the Foundation*

46. The requested records are records within the scope of the NVRA's Public Disclosure Provision.

47. The NVRA's Public Disclosure Provision requires Defendant to maintain the requested records for at least two years.

48. The Public Disclosure Provision authorizes and entitles the Foundation to inspect and duplicate, or otherwise receive the requested records.

49. Defendant's violations of the NVRA are causing the Foundation to suffer a concrete informational injury because the Foundation does not have records and information to which it is entitled under federal law. *FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.").

50. The Foundation's informational injury is causing the Foundation to suffer additional adverse consequences.

51. First, by denying the Foundation the requested voter list maintenance records, Defendant is preventing the Foundation from evaluating Arizona's compliance with state and federal voter list maintenance obligations, including the requirement to remove deceased registrants from the voter roll. *See* 52 U.S.C. § 20507(a)(4)(A). In other words, the Foundation cannot do precisely what Congress intended the public to do with Section 8(i) records. *See, e.g.*, *Project Vote/Voting for Am., Inc.*, 682 F.3d at 334-35 (explaining that the Public Disclosure Provision language "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies").

52. Second, by denying the Foundation the requested voter list maintenance records, Defendant is preventing the Foundation from proposing best practices and solutions

9

that will assist Arizona in carrying out its voter list maintenance programs and activities and help ensure Arizona's voter roll is accurate and current. *See* 52 U.S.C. § 20501(b)(4) (explaining that one of the NVRA's purposes is "to ensure that accurate and current voter registration rolls are maintained"); *see also, e.g.*, Public Interest Legal Foundation, *Best Practices for Achieving Integrity in Voter Registration*, June 21, 2017, https://publicinterestlegal.org/pilf-files/PILF-best-practices-report-FINAL.pdf (last visited Jul. 7, 2024); Public Interest Legal Foundation, *Steeling the Vote: Allegheny County, PA Reveals How Citizenship Verification Protects Citizens and Immigrants Alike* at 15 (Proposed Solutions), July 12, 2018, https://publicinterestlegal.org/blog/report-how-noncitizens-vote-in-allegheny-county-pa/ (last visited Jul. 7, 2024).

53. Third, by denying the Foundation the requested voter list maintenance records, Defendant is preventing the Foundation from speaking (and educating) about matters of public importance—namely, erroneous disenfranchisement of voters and voter roll accuracy. *See, e.g.*, Public Interest Legal Foundation, *Critical Condition: American Voter Rolls Filled with Errors, Dead Voters, and Duplicate Registrations*, Sept. 16, 2020, https://publicinterestlegal.org/pilf-files/Report-Critical_Condition-Web-FINAL-FINAL.pdf (last visited Jul. 7, 2024). Relatedly, the Foundation is prevented from providing policy advice to state officials and legislative guidance and testimony to Congress regarding state compliance with voting rights legislation. *See, e.g.*, Public Interest Legal Foundation, *ICYMI: PILF Testified to U.S. Congress on Preventing Aliens from Voting*, May 17, 2024, https://publicinterestlegal.org/election-frontline/icymi-pilf-testified-to-u-s-congress-on-preventing-aliens-from-registering-and-voting/ (last visited Jul. 7, 2024).

54. Fourth, by denying the Foundation the requested voter list maintenance records, Defendant frustrates the Foundation's accumulation of current and timely institutional knowledge upon which it depends to operate effectively and accurately.

55. Defendant's violation of the NVRA is thus frustrating, impeding, and harming the Foundation's efforts to carry out its organizational mission and thereby injuring the Foundation.

56. The Foundation intends to request similar records from Defendant in the future.

## COUNT I

### Violation of NVRA Section 8(i), 52 U.S.C. § 20507(i)

### Failure to Maintain Voter List Maintenance Records for At Least Two Years

57. The Foundation realleges the preceding paragraphs as if fully stated herein.

58. The requested ERIC Retraction Reports are "records" subject to maintenance and disclosure under the NVRA's Public Disclosure Provision. 52 U.S.C. § 20507(i)(1).

59. The ERIC Retraction Reports are in the Defendant's possession, custody, and control.

60. The NVRA's Public Disclosure Provision requires Defendant to maintain the ERIC Retraction Reports for a minimum of two years.

61. Defendant does not maintain the ERIC Deceased Retraction Reports for two years or for any period of time.

62. By not maintaining the ERIC Retraction Reports as the NVRA requires, Defendant is violating the NVRA.

63. Any Arizona statute, regulation, practice, or policy that conflicts with, overrides, or poses obstacles to the NVRA, a federal statute, is preempted and superseded under the Supremacy Clause and the Elections Clause of the Constitution of the United States. *See Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 9 (2013). Any such statute, regulation, practice, or policy is invalid and unenforceable.

64. As alleged herein, Defendant's actions are causing concrete harm to the Foundation.

65. The Foundation is entitled to relief but has no adequate remedy at law.

## COUNT II

### Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)

**Failure to Make Voter List Maintenance Records Available for Public Inspection**

66. The Foundation realleges the preceding paragraphs as if fully stated herein

67. The requested ERIC Retraction Reports are "records" subject to maintenance and disclosure under the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1).

68. The ERIC Retraction Reports are in the Defendant's possession, custody, and control.

69. The NVRA's Public Disclosure Provision requires Defendant to make the ERIC Retraction Reports available for public inspection and duplication, or otherwise produce them. 52 U.S.C. § 20507(i)(1).

70. Defendant has not provided the ERIC Retraction Reports to the Foundation.

71. By not providing the ERIC Retraction Reports to the Foundation as the NVRA requires, Defendant is violating the NVRA.

72. Any Arizona statute, regulation, practice, or policy that conflicts with, overrides, or poses obstacles to the NVRA, a federal statute, is preempted and superseded under the Supremacy Clause and the Elections Clause of the Constitution of the United States. *See Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 9 (2013). Any such statute, regulation, practice, or policy is invalid and unenforceable.

73. As alleged herein, Defendant's actions are causing concrete harm to the Foundation.

74. The Foundation is entitled to relief but has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

1. Declaring that Defendant is in violation of Section 8(i) of the NVRA for failing to maintain the ERIC Retraction Reports for a minimum of two years.

2. Declaring that Defendant is in violation of Section 8(i) of the NVRA for denying the Foundation the opportunity to inspect and copy, or otherwise receive, the ERIC Retraction Reports.

3. Ordering Defendant to maintain ERIC Retraction Reports for a minimum of two years, as the NVRA requires.

4. Permanently enjoining Defendant from engaging in similar unlawful actions.

5. Ordering Defendant to pay the Foundation's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and,

6. Granting the Foundation further relief that this Court deems just and proper.

RESPECTFULLY SUBMITTED this 31st day of July, 2025.

                FRAZIER LAW, PLLC

                By:  /s/ Grant H. Frazier
                    Grant H. Frazier
                    Brennan A.R. Bowen
                    Attorney for Plaintiff

                By:  /s/ Joseph M. Nixon
                    Joseph M. Nixon*
                    PUBLIC INTEREST LEGAL FOUNDATION
                    107 S. West St., Ste. 700
                    Alexandria, VA 22314
                    Tel: (703) 745-5870
                    jnixon@PublicInterestLegal.org

*Motion for admission pro hac vice forthcoming*

*Attorneys for Plaintiff Public Interest Legal Foundation*