KRISTIN K. MAYES
Attorney General
Firm State Bar No. 14000

Kara Karlson, No. 029407
Karen J. Hartman-Tellez, No. 021121
Senior Litigation Counsel
Kyle Cummings, No. 032228
Assistant Attorney General
2005 North Central Avenue
Phoenix, AZ  85004-1592
Telephone (602) 542-8323
Facsimile (602) 542-4385
Kara.Karlson@azag.gov
Karen.Hartman@azag.gov
Kyle.Cummings@azag.gov
adminlaw@azag.gov
*Attorneys for Defendant Arizona
Secretary of State Adrian Fontes*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Public Interest Legal Foundation, Inc., a Virginia non-stock non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State,<br><br>Defendant. | No. CV-25-02722-MTL<br><br>**ARIZONA SECRETARY OF STATE'S MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Arizona Secretary of State Adrian Fontes moves to dismiss the Complaint filed by Plaintiff Public Interest Legal Foundation, Inc., a Virginia-based non-profit, because Plaintiff's claims are insufficient to invoke federal jurisdiction and fail to state a claim for which relief can be granted. The Complaint should be dismissed.

## **INTRODUCTION**

The National Voter Registration Act of 1993 ("NVRA") encourages the right to vote, while codifying procedures to maintain voter rolls that had often been left to bloat by adding voters but inconsistently or never removing voters who later became ineligible. Congress' stated purpose in enacting NVRA was to "increase the number of eligible citizens who register to vote in elections for Federal office" and "enhance[] the participation of eligible citizens as voters." 52 U.S.C. § 20501(b)(1)-(2). As part of the process of passing NVRA into law, Congress worked together to include provisions regarding the removal of people who were verified as no longer eligible to vote. Congress charged the states with identifying the public official(s) who would be tasked with carrying out the NVRA's list maintenance procedures. In Arizona, the Secretary is that individual elected official, who works with the fifteen independently elected county recorders and county supervisors, to ensure the voter rolls are accurate and up-to-date. A.R.S. § 16-142. One of the many processes that the Secretary and the counties use to update voter registration records are death records, directly from the Arizona department of vital records and through the multi-state shared Electronic Record Information Center ("ERIC"). In this action, Plaintiff seeks a list of individual names and personal information obtained by the Secretary through ERIC, which comes from the Social Security Administration ("SSA").

Plaintiff lacks standing to bring this claim, but struggles mightily to manufacture it. The out-of-state non-profit claims that it needs the list of specific voters and their private information to "assist Arizona in carrying out its voter list maintenance programs

and activities and help ensure Arizona's voter roll is accurate and current." (DE 1 at ¶ 52). But Arizonans elect public officials at the state and county level to do just that. And they do. It is inappropriate for an out-of-state entity with no connection to Arizona—and no accountability to Arizona voters—to invoke federal jurisdiction to override the decisions of local, elected public officials who are ultimately accountable to Arizonans. The Plaintiff's other alleged harms are likewise too weak to provide a "case" or "controversy" for this Court to hear, and the Complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Even if Plaintiff can satisfy Article III standing requirements—which are necessary bulwarks to ensure federal courts are not tasked with policy-making for the states—they fail to state a claim for which relief can be granted. The only document the Secretary withheld is a list of certain voters and their private information, and the Secretary is prohibited by federal law from producing to non-certified entities. Plaintiff seeks ERIC Retraction Reports, alleging that "[a]ny Arizona statute, regulation, practice, or policy that conflicts" with NVRA must fall to NVRA. (DE 1 at ¶¶ 63, 72). However, the Secretary informed Plaintiff that it is the federal statutes and regulations governing the Death Master File ("DMF") that prevents the disclosure of this information to the Plaintiff. The Secretary and his staff are prohibited from releasing the information from the SSA to unauthorized organizations; the unauthorized release of SSA information, including data from the DMF, is punishable as a felony. 42 U.S.C. § 405(r)(9)(F). Even if Plaintiff could demonstrate it has standing (it cannot), it does not state a claim for which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

### I.    List Maintenance.

NVRA ensures eligible voters are able to vote, while also requiring regular removals of ineligible voters when they move out of a jurisdiction, become ineligible

due to a felony conviction or incompetence, or because they die. 52 U.S.C. § 20507(a)(1), (4), (c)-(g). The states are allowed to engage in additional list maintenance, so long as those procedures are "uniform, nondiscriminatory, and in compliance with the Voting Rights Act," and do not remove voters solely because they have failed to vote in fewer than two consecutive federal election cycles. *Id.* at (b).

Arizona engages in list maintenance that goes above and beyond the minimum described in NVRA. One of those additional list maintenance activities the Secretary participates in is ERIC. A.R.S. § 16-166(E) (allowing the counties to use information from the post office and "electronic voter registration information center to identify registrants whose addresses may have changed."). ERIC was founded in 2012 as a group of states that created "a non-profit, nonpartisan membership organization created by and comprised of state election officials from around the United States."[1] Because it is a voluntary organization, the number of member states has changed over the last twelve years, beginning with seven states in 2012, and growing to include more than half the states in the country at its peak before 2020. Currently, ERIC includes twenty-six states and the District of Columbia, from Alaska to Georgia, and as politically diverse as Hawaii and New Jersey to Utah and Kentucky. Arizona joined ERIC in 2018.

ERIC receives information from a variety of sources and creates four list maintenance reports: Cross-State Movers Report, In-State Movers Report, Duplicate Report, and Deceased Report. Relevant to the request here, the Deceased Report "Identifies voters who have died using voter registration data and Social Security death data known as the Limited Access Death Master File." ERIC is "certified to use official death data from the Social Security Administration."[2] The Secretary is allowed to receive this data under federal law. *See* 42 U.S.C. §§ 405(r)(7), 1306b. Plaintiff is not certified to receive "information" from the SSA's DMF.

---

[1] Electronic Reg. Info. Ctr., What is Eric? *available at* https://ericstates.org/about/.
[2] Electronic Reg. Info. Ctr.,ERIC Security *available at* https://ericstates.org/security/.

3

## II. The Plaintiff's Public Records Request and the Secretary's Production of Records.

The Plaintiff requested records regarding the Secretary's list maintenance programs, and the Secretary provided the responsive records which could be disclosed. However, Plaintiff here seeks information to which is it not entitled and which it is prohibited by federal law from accessing. This was explained to Plaintiff in the Secretary's response to the PRR request: "Pursuant to 15 C.F.R. § 1110.1 *et seq*, only a certified person may receive access to the Deceased Redaction File and associated lists to the Death Master File as defined in 15 C.F.R. § 1110.2." (DE 6 at 38.) After Plaintiff did not receive this list of voters and their personal information, it filed this suit in federal court for records that it is not certified to possess.

## LEGAL ARGUMENT

### I. Plaintiffs Lack Standing to Bring this Suit.

It is hornbook law that the party asserting federal jurisdiction has the burden of demonstrating concrete and particularized injuries sufficient to maintain standing under Article III of the United States Constitution in the same manner and with the same degree of evidence required at later stages in the litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "To establish standing . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief. *Food & Drug Admin. v. All. for Hippocratic Med.* ("*FDA*"), 602 U.S. 367, 381 (2024).

NVRA is subordinate to the Constitution; the statute cannot create a lower standing threshold than the Constitution requires. "The doctrine of standing 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong' and 'confines the federal courts to a properly judicial role.'" *Dep't of Com. v. New York*, 588 U.S. 752, 766 (2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The burden of proof to demonstrate sufficient evidence to support

4

standing is on the party asserting federal jurisdiction. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). While this Court need not consider matters outside the pleadings to determine that Plaintiffs in this case do not have standing, this Court is not confined to Plaintiffs' characterizations of the facts to determine whether federal jurisdiction exists; to do so would strip Article III's separation-of-powers mandate. *See Lujan*, 504 U.S. at 560.

### A. Plaintiff Asserts No Injury Sufficient to Provide Standing.

Article III standing requires a plaintiff to show "concrete and particularized" injury in fact, a causal connection between the injury and harm, that is traceable to the defendant's actions rather than the actions of a third party, and that is redressable by a favorable decision. *Lujan*, 504 U.S. at 560. The Supreme Court has explained that to satisfy Article III, the injury must be "'concrete,' meaning that it must be real and not abstract." *FDA*, 602 U.S. at 381. Additionally, the injury must affect the plaintiff personally and in an individualized way. *Id.* "Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action [and prohibits suits] based only on an 'asserted right to have the Government act in accordance with law.'" *FDA*, 602 U.S. at 381. The out-of-state organization that has filed suit here is the "concerned bystander[]" with no concrete harm that Article III prohibits from invoking federal jurisdiction "whenever [it] believes that the government is acting contrary to the Constitution or other federal law." *Id.* at 382.

Plaintiffs allege four ways that the Secretary purportedly has harmed its interests, but none of them provides the individualized harm that Article requires. *See id.* ("Article III does not contemplate a system where 330 million citizens can come to federal court whenever they believe that the government is acting contrary to the Constitution or other federal law."). Plaintiff claims that its out-of-state non-profit organization has standing to sue the Secretary in federal court because it has: 1) a purported interest in "evaluating

Arizona's compliance with state and federal voter list maintenance obligations, including the requirement to remove deceased registrants;" (DE 1 at ¶ 51); 2) a purported interest in "assist[ing] Arizona in carrying out its voter list maintenance programs and activities and help ensure Arizona's voter roll is accurate and current." (*id.* at ¶ 52); 3) withholding specific voter information prevents the organization from "speaking (and educating) about matters of public importance" (*id.* at ¶ 53); and 4) "frustrates the [Plaintiff's] accumulation of current and timely institutional knowledge upon which it depends to operate effectively and accurately." (*id.* at ¶ 54). None of these allegations provide the concrete, real, particularized, and individualized harm necessary to establish standing in federal court.

The first two issues—whether Arizona complies with the removal requirements of the NVRA and the Virginia-based non-profit's purported desire to "help ensure" Arizona's elected officials comply with the law—fall directly within the forms of generalized harm that cannot form the basis for federal standing under Article III. Indeed, this Court recently dismissed a similar case brought by Arizona voters and political activists for lack of standing. *See Mussi v. Fontes*, CV-24-01310-DWL, 2024 WL 4988589 (Dec. 5, 2024) (dismissing complaint because plaintiffs could not demonstrate a "concrete and particularized injury that is actual and imminent" even though Arizona voters alleged that they would be required to expend resources educating the public about election-integrity issues, and "persuad[e] elected officials to improve list maintenance."). The *Mussi* plaintiffs, as Arizona voters and political activists, claimed injuries more direct to themselves than the Plaintiff here. And the *Mussi* plaintiffs' purported desire to ensure compliance with NVRA and educate Arizona policy-makers is very similar to the Virginia Plaintiff here that wants to "ensure" compliance with federal law and discuss policies with lawmakers. (DE 1 at ¶¶ 51-52.) *Mussi* was correctly decided; a contrary decision finding an out-of-state organization has

1  standing to sue for the same reasons would be inconsistent and contrary to Article III's
2  standing requirements. *FDA*, 602 U.S. at 381-82.
3       Any injury must be one in which Plaintiff has a personal stake. Here, a non-
4  voting, out-of-state organization cannot be injured by Arizona's list maintenance,
5  whether it is the most rigorous or least rigorous system in the country. Federal courts are
6  not "an open forum for citizens 'to press general complaints about the way in which
7  government goes about its business.'" *FDA*, 602 U.S. 367, 379 (2024) (collecting cases).
8  But even if this Plaintiff could claim an injury based on the alleged failure to comply
9  with the statutory minimum list maintenance procedures in NVRA, they certainly cannot
10 claim a federally-cognizable injury based on the alleged failure of Arizona to comply
11 with additional list maintenance procedures it has voluntarily undertaken through ERIC.
12      Plaintiff claims an interest in ensuring Arizona complies with NVRA and to
13 "assist Arizona" in its list maintenance programs. This is just a general interest in
14 ensuring the law is followed, but that desire is insufficient to provide a plaintiff with
15 standing. *See FDA*, 602 U.S. at 379 ("[F]ederal courts [do not] operate as an open forum
16 for citizens 'to press general complaints about the way in which government goes about
17 its business.'"). If "a citizen may not sue based only on an 'asserted right to have the
18 Government act in accordance with the law,'" then that entity must also lack standing to
19 sue in federal court when the state exceeds the requirement in federal law. *Id.* at 381.
20 Plaintiff's vision of standing would allow federal court intervention into the internal
21 policy-making of states, well outside "the Judiciary's proper—and properly limited—
22 role in our constitutional system." *United States v. Texas*, 599 U.S. 670, 675-76 (2023).
23 This would allow federal judicial oversight of state policy whenever a state engaged in
24 additional, voluntary programs, like Arizona's participation in ERIC.
25      The third purported interest is an allegation that the Secretary's failure to provide
26 information that is prohibited from disclosure under federal law prevents the Plaintiff
27 from speaking about Arizona's list maintenance. As an initial matter, the Secretary
28

promptly released all non-confidential materials related specifically to the issue about which Plaintiff wishes to speak. The Secretary's refusal to disclose legally-protected documents does not (and cannot) create a First Amendment violation, any more than other common confidentiality requirements, like the Health Insurance Portability Accountability Act ("HIPAA") or preventing the Internal Revenue Service from disclosing Personally Identifying Information ("PII") restricts the First Amendment rights of groups who may be interested in the physical or financial health of an individual or groups of people. Plaintiff's fourth allegation of harm, apparently a "catch all" standing provision to allow Plaintiff to "accumulate[e] . . . institutional knowledge" is just as infirm, and significantly more nebulous, than the other three allegations of harm. (DE 1 at ¶ 54.) Simply put, Plaintiff does not have standing to pursue this claim.

The failure to produce legally-protected personally-identifiable and private information does not prevent or inhibit the Plaintiff's speech. This is not like *American Encore v. Fontes*, 152 F.4th 1097 (9th Cir. 2025), where the Ninth Circuit upheld an injunction entered by this Court against provisions that the *American Encore* plaintiffs argued criminalized their speech. In *American Encore*, the plaintiff argued that statements in Arizona's Elections Procedures Manual ("EPM") that provided examples of speech that could be considered intimidating violated their First Amendment rights. The Ninth Circuit agreed that the challenged EPM provisions could chill speech because the EPM provided specific examples that may dissuade plaintiffs "from engaging in their intended speech." *Id.* at 1118.

Here, the Secretary has done nothing to restrict Plaintiff's speech in any way. Plaintiff has access to the number of people removed due to death through regular EAVS reports, or via a NVRA or Public Records Request. For example, before the 2024 election, Arizona removed 104,426 deceased voters.[3] Indeed, the records that were

---

[3] EAVS 2024 Report Voter Reg. Table 5: Voter List Maintenance—Removal Actions *available at* https://www.eac.gov/sites/default/files/2025-06/2024_EAVS_Report_508c.pdf.

produced to the Plaintiff explain that the death retractions are lists from the SSA, not ERIC, and not the Secretary. Critically, *Congress* limited what States and certified entities can do with the information Plaintiff seeks, not the Secretary.

Plaintiff's inability to obtain the specific information it seeks does not injure the Plaintiff's ability to speak about "erroneous disenfranchisement of voters and voter roll accuracy" and "providing policy advice." (DE 1 at ¶ 53.) This is a request for information, not any restriction on speech or conduct created by the Secretary. Plaintiff can use the responsive documents already produced by the Secretary, including electronic correspondence regarding the DMF and retracted files, to discuss these issues. Plaintiff's inability to receive everything in the DMF short of the social security number, for people who the SSA initially reported as deceased but now reports are alive, does not restrict their right to speak. The Secretary's compliance with federal law that protects this sensitive data does not create a restriction on Plaintiff's speech, and thus this purported justification also fails to provide a cognizable injury for standing purposes.

Indeed, it is squarely within the Plaintiff's ability to rectify this asserted injury. Plaintiffs could receive the DMF, as many other users do, by completing the certification process required by the SSA. 15 C.F.R. § 1110.102. Any harm Plaintiff suffers from not receiving this information is therefore not traceable to the actions of the Secretary, but federal law and the Plaintiff's own conduct and its refusal or inability to comply with the federal regulations that would allow it to obtain this information.

For these reasons, Plaintiffs have not demonstrated the individualized harm necessary to invoke federal jurisdiction as required by the Constitution.

**B. The Secretary's Actions Are Not Causing Plaintiff Any Harm.**

To demonstrate the requisite causation necessary to sustain standing, a plaintiff must show that the defendant caused plaintiff's injuries, but Plaintiff cannot make this showing. For example, the Supreme Court found plaintiff Diamond Alternative Energy, LLC had standing to challenge a federal rule promulgated by the Environmental

1  Protection Agency ("EPA") that allowed California (and other states) to enforce more
2  stringent fleet-wide emissions standards and require electrification by car manufacturers,
3  because it would reduce the amount of fossil fuels consumed. *Diamond Alternative*
4  *Energy, LLC v. Environmental Protection Agency*, 606 U.S. ---, 145 S.Ct. 2121, 2135
5  (2025). The *Diamond* plaintiffs alleged the EPA's rule allowing a major market to enact
6  stricter emission requirements would harm it financially. This is the kind of causative
7  link the Constitution requires to establish standing.

8  A Virginia-based non-profit is not—and never can be—the Arizona Secretary of
9  State, who is the public official charged by state and federal law with compliance with
10 the NVRA after being elected by Arizona voters. Because Plaintiff is not charged with
11 protecting the integrity of the voter rolls, the Secretary's inability to provide the Plaintiff
12 with the DMF due to federal privacy law does not prevent Plaintiff from "evaluating
13 Arizona's compliance with state and federal voter list maintenance obligations,"
14 "assist[ing] Arizona in carrying out its voter list maintenance programs and activities,"
15 or depriving it of "accumulate[ing] current and timely institutional knowledge." (Compl.
16 ¶¶51-52, 54). Simply put, the Secretary has not *caused* Plaintiff any harm by refusing to
17 supply protected data to an entity that does not do the things that it claims to want to do
18 here.

19 **C. The Plaintiff's Requested Order Will Not Redress Its Grievances.**

20 The Plaintiff bears the burden to demonstrate each element of standing. *Lujan*,
21 504 U.S. at 561. This includes the requirement that the alleged harm will be redressed
22 by judicial intervention. *Id.* at 562. Plaintiff must, at an "irreducible constitutional
23 minimum" demonstrate it has standing before it is allowed to try to use NVRA to access
24 private personal information about other Americans. *See, e.g. Spokeo, Inc. v. Robins*,
25 578 U.S. 330, 338 (2016). Plaintiff cannot make this showing.

26 Even if Plaintiff is provided the information it seeks in this litigation, this
27 information will not redress its grievances. For example, Plaintiff claims that it needs
28

the information to "evaluat[e] Arizona's compliance with state and federal voter list maintenance obligations, including the requirement to remove deceased registrants from the voter roll." (DE 1 at ¶ 51.) However, Plaintiff requests information for voters who are *living*. (DE 1 at ¶¶ 27-28.) This information cannot possibly further Plaintiff's asserted desire to determine if the Secretary is removing *deceased* voters. For similar reasons, the individual identities of those voters cannot enable Plaintiff to "assist Arizona in carrying out its voter list maintenance programs," "prevent[] the Foundation from speaking (and educating) about matters of public importance . . . [and providing] advice to state officials," or "frustrate the Foundation's accumulation of current and timely institutional knowledge." (DE 1 at ¶¶ 51-54.) Simply put, the individual identities of people who are alive, not deceased, cannot assist the Plaintiff in any of its purported goals for this information.

Finally, this Court should dismiss this case for lack of standing, without leave to amend, as any amendment would do no more than "assert a 'generalized interest in seeing that the law is obeyed,' an interest that 'is neither concrete nor particularized.'" *Lake*, 83 F.4th at 1203. No amendment would cure these standing defects, so dismissal without leave to amend is warranted. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Plaintiff does not have standing; its claim should be dismissed.

## II. Plaintiffs Fail to State a Claim for which Relief Can be Granted.

Alternatively, if this Court determines Plaintiff has standing (it does not), Plaintiff's claims still would not survive a motion to dismiss. Rule 12(b)(6) requires the dismissal of a complaint that fails to state a claim for which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted) (quotation omitted). However, "when the allegations in a complaint, . . . could not raise a claim of entitlement to relief, this basic

deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Well-pleaded factual allegations must be accepted as true unless they "contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (instructing courts to "consider matters of which a court may take judicial notice" and exhibits to the complaint when deciding a motion to dismiss under Rule 12(b)(6)).

In this case, the parties appear to agree on the basic background facts. The Secretary is required by state and federal law to conduct general, uniform procedures to ensure that the State's voter rolls are accurate. 52 U.S.C. § 20507(c)-(g) (providing various mechanisms for the State to remove ineligible voters and requiring the removal of certain groups of voters within specific parameters); A.R.S. § 16-142 (identifying the Secretary as the officer responsible for NVRA coordination). This duty includes the responsibility to remove people who are registered, but who should no longer be registered, for a number of specific reasons provided by law. The removal provisions of NVRA operate as the minimum that a State must do to maintain its rolls. Arizona exceeds NVRA's requirements to ensure accurate voter registration rolls. *See, e.g.* A.R.S. § 16-166(F) (requiring documentation of citizenship to register to vote).

One of the ways in which Arizona exceeds NVRA's list maintenance requirements was by joining ERIC and continuing to be an ERIC Member State. ERIC is a multi-state clearinghouse of data that is obtained from the Member states, public databases, and certain proprietary or confidential information. One of those sources of private information is the DMF and the Retracted Death List from the Social Security Administration ("SSA"). Congress prohibits the disclosure of "information contained on the Death Master File with respect to any deceased individual at any time during the 3-calendar-year period beginning on the date of the individual's death" unless that person

is certified to receive that information. Pub. L. 113-67 § 203 (Dec. 26, 2013), 127 Stat. 1165, 1178. The SSA is allowed to share "applicable information"—defined by 42 U.S.C. § 405(r)(9)(D) as the name, social security number, date of birth, and whether that individual is deceased—with state governments and certified entities. ERIC is certified to receive and store confidential SSA data; Plaintiff is not.

The SSA Commissioner is allowed to share certain information from the DMF with a State and its agents or employees, but no one else. DMF information "shall be considered as strictly confidential" and any state official, contractor, or employee "who, without the written authority of the Commissioner, publishes or communicates any applicable information in such individual's possession . . . shall be guilty of a felony and upon conviction thereof shall be fined or imprisoned, or both . . ." 42 U.S.C. § 405(r)(9)(F). This information is also exempt from disclosure under 5 U.S.C. § 552, more commonly known as the Freedom of Information Act ("FOIA"). *Id.* at (6). All information "furnished [to the Commissioner by the states] or maintained by the Commissioner under this subsection" is protected from dissemination "to protect the information from unauthorized use or disclosure." *Id.* at (5).

The Commissioner has promulgated rules related to decedent information that is collected by the SSA. The DMF includes "the name, social security account number, date of birth, and date of death of deceased individuals maintained by the Commissioner . . ." 15 C.F.R. § 1110.2. The Limited Access DMF "includes DMF with respect to any deceased individual at any time during the three-calendar-year period beginning on the date of the individual's death." *Id.* "Any Person desiring access to the Limited Access DMF must certify in accordance with this part [and once certified] will be entered into the publicly available list of Certified Persons maintained by NTIS, and will be eligible to access the Limited Access DMF made available by NTIS through subscription." *Id.* at § 1110.100(a). All Persons who apply for certification to access the Limited Access DMF must certify that their access "has a legitimate business purpose," including

1  "systems, facilities, and procedures in place to safeguard the accessed data. *Id.* at §
2  1110.101.
3    Congress is presumed to know what the law was when it passes new laws. So,
4  when Congress passed the Privacy Act of 2013, this Court must construe the terms of the
5  Privacy Act with NVRA, which was passed two decades earlier. If there is a conflict
6  between the older, more generic NVRA, and the newer, more specific Privacy Act, the
7  Privacy Act controls. NVRA is the more generic statute here because it requires the
8  production of "all records concerning the implementation of programs and activities
9  conducted for the purpose of ensuring the accuracy and currency of official lists of
10 eligible voters." 52 U.S.C. § 20507(i). The Privacy Act refers to more limited data,
11 "information contained on the Death Master File with respect to any deceased
12 individual" from a more limited source "[t]he Secretary of Commerce." 42 U.S.C. §
13 1306c(a). These statutes can be harmonized by recognizing that the Secretary must
14 produce the records regarding the procedure for obtaining and utilizing the DMF records,
15 which he did, while recognizing that the Secretary is also prohibited from disclosing the
16 "information contained" on the DMF. *See Pub. Interest Legal Found., Inc. v.*
17 *Dahlstrom*, 673 F. Supp. 3d 1004 (D. Alaska, May 17, 2023) (explaining that the
18 Bipartisan Budget Act of 2013 prevented disclosure of data from the DMF for three
19 years from the date of death). The Secretary did exactly that.
20   The need to overlay the restrictions of the more recently-enacted statute is
21 particularly important here, where the Plaintiff seeks to obtain information that did not
22 exist at the time of NVRA's passage, because of technology that NVRA did not
23 contemplate. This is evident from the plain terms of 52 U.S.C. § 20507(i), which uses
24 outdated language like "photocopying." Specifically, NVRA requires the chief election
25 official to "make available for public inspection and, where available, photocopying at a
26 reasonable cost," NVRA-related records. The Eleventh Circuit recently explained why
27 NVRA does not require the production of records in electronic form, but only via in-
28

person review or by photocopying, after comparing NVRA's plain language to the FOIA modernization act passed in 1996, only three years after NVRA. Unlike NVRA, the FOIA modernization act allowed documents to be produced by "computer telecommunications" or "other electronic means." *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324, 1332-35 (11th Cir. 2024). The Plaintiff seeks to obtain information from the SSA and ERIC through the Secretary, but nothing like ERIC existed when NVRA was passed. Arizona should not be subject to heightened disclosure requirements because it undertakes voluntary list maintenance, and should not be required to produce digital data that NVRA never contemplated because it only exists in digital form. *See id.* (explaining that "[a]n electronic database is not 'printed or graphic material," and thus not a photocopy and outside the disclosure requirements of NVRA).

The Plaintiff's public record response tries to obfuscate the clear, statutory prohibition on producing data from the DMF for three years after the person dies, by asserting that it only wants information about people who are alive. (DE 6 at 39.) Unfortunately, however, the information Plaintiff seeks still comes from the SSA through the DMF, or the States themselves. And, because Plaintiff seeks the data of people who are not yet deceased, the deadline on the confidentiality provisions, which does not expire until the end of the "3-calendar-year period beginning on the date of the individual's death," has not expired. 42 U.S.C. § 1306c(a). Information on the DMF is protected from public disclosure, and there is no way for Plaintiff to craft a request for this specific information that does not require the violation of this section of the 2013 law, which by the statute's express terms was passed to protect the private information of Americans.

The fact that a person may improperly listed on the DMF does *not* remove their private information from the protection from disclosure. As an initial matter, it would be absurd to provide more protection to the private information of a living person than someone who died. All of the information provided to the SSA to augment the DMF

with data from the states is "strictly confidential" pursuant to the original SSA statutes. 42 U.S.C. § 405(r)(9)(F). And the 2013 Privacy Act added additional protections and penalties for the disclosure of information that the SSA maintains. *See* 42 U.S.C. § 1306c.

Even if Plaintiff could satisfy the constitutional standing requirements (it does not), its claims still fail. As a matter of federal law, the Secretary is prohibited from providing the names and identifying information of still-living voters that Plaintiff seeks because federal law prohibits the disclosure of this information to parties who are not certified to protect it. Plaintiff does not state a claim upon which relief can be granted, and its Complaint should be dismissed for failure to state a claim.

## **CONCLUSION**

Plaintiff cannot satisfy the Constitution's standing requirement, and even if it did, Plaintiff still fails to state a claim for which relief can be granted. Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), or alternatively (b)(6).

Respectfully submitted this 20th day of October, 2024.

    Kristin K. Mayes
    Attorney General

    */s/ Kara Karlson*
    Kara Karlson
    Karen J. Hartman-Tellez
    Senior Litigation Counsel
    Kyle Cummings
    Assistant Attorney General
    *Attorney for Defendant Arizona Secretary of State Adrian Fontes*

**CERTIFICATE OF CONFERRAL**

I certify that counsel for the Plaintiff and Defendant Arizona Secretary of State met and conferred in good faith via video and teleconference, as required by L.R. Civ. P. 12.1(c) before this Motion was filed. After discussing the arguments raised in the Motion, the conferees were unable to agree that the Plaintiff's pleading was curable by amendment.

DATED this 20th day of October, 2025.

*/s/ Kara Karlson*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of October, 2025, I filed the forgoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/Monica Quinonez